**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **CR. NO. 05-267 (RMC)** |
| | ) | |
| **ALVARO SERRANO ARCHBOLD-** | ) | |
| **MANNER, et. al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**GOVERNMENT'S OMNIBUS RESPONSE TO DEFENDANT'S**
**PRETRIAL MOTIONS**

**INTRODUCTION**

The United States of America, by and through the undersigned attorney, hereby

submits this Omnibus Response to Defendants' Pretrial Motions.  Because many of

defendants' motions involve common issues of fact and law, the government believes

that this consolidated response will be the most efficient and organized means of

addressing all of defendants' arguments.  The government has organized it response into

two sections, 1. Motions:  Discovery and 2. Motions: Substantive.

**FACTUAL SUMMARY**

The defendants were indicted on conspiracy to distribute cocaine, distribution of

cocaine and attempted distribution of cocaine.  All criminal defendants in this case are

participated in a criminal conspiracy based in the North Coast area of Colombia which

has shipped thousands of kilograms of cocaine from Colombia to the United States.  The

evidence to support the charges consists of numerous lawful telephone interceptions in

Colombia; cocaine seizures from ocean-going vessels; documents and records; interceptions of couriers; extensive law enforcement surveillance; and the statements of coconspirators.

The defendants fulfilled a number of responsibilities within the DTO to facilitate the manufacture and transportation of cocaine from Colombian to Central American or the Caribbean Sea region then to Mexico and finally into the United States.  There have been numerous conversations between members of the DTO discussing shipments and transportation of cocaine in a thousand kilograms or more amounts.  These conversations between members of the DTO involved discussing all aspects of supervising, organizing, and facilitating numerous cocaine shipments, including the seized cocaine shipments.

Beginning in 2005, several of these cocaine shipments, amounting to thousands of kilograms, have been seized by law enforcement, on the dates of July 22, 2005, January 21, 2006, March 7, 2006, March 24, 2006 and the seizure of a boat on January 22, 2006 which had been prepared for the transportation of cocaine.  Through the criminal investigation, including the use of wiretapped telephone conversations, Colombian law enforcement officials were able to tie specific members of the conspiracy to the seizures.

**MOTIONS RE: DISCOVERY**

Defendants have filed the following motions to compel disclosure:

A.  Motion By Alvarez Lozano That All Prior Statements of Witnesses Be Provided Before Trial In Original Language

B.  Motion By Alvarez Lozano That The Government Obtain All Prior Statements of Witnesses Located Overseas So That They May Disclose Them Pursuant to 18 U.S.C. 3500

C.  Motion By Alvarez Lozano To Require The Government Make Available Law Enforcement Agents Who Participated In the Investigation of This Case

D.  Motion by Alvarez Lozano for the Government to Produce a Schematic of Interrelatedness of Conspiracy

E.  Motion By Alvarez Lozano For Early Disclosure of Information Regarding Confidential Informant Witnesses; Special Employee Witnesses and Cooperating Criminals Pursuant to Brady and Giglio and Their Progeny, Rule 16 and the U.S. Constitution Fifth and Sixth Amendments

F.  Joint Motion By Defendants Jesus Antonio Murillo-Lenis, Ranfer Rios-Mercado, Hugo Alvarez Lonzano, German Villegas-Mejia, Gerardo Tobon-Rojas and Fernando Zapata-Bermudez To Order Mandated Missing Discovery

G.  Joint Motion By Defendants Jesus Antonio Murillo-Lenis, Ranfer Rios-Mercado, Hugo Alvarez Lonzano, German Villegas-Mejia, Gerardo Tobon-Rojas and Fernando Zapata-Bermudez To Compel Production of All Wiretap Calls

H.  Joint Motion By Defendants Jesus Antonio Murillo-Lenis, Ranfer Rios-Mercado, Hugo Alvarez Lonzano, German Villegas-Mejia, Gerardo Tobon-Rojas and Fernando Zapata-Bermudez For Timely Disclosure of Identity of Informants

I.  Joint Motion By Defendants Jesus Antonio Murillo-Lenis, Ranfer Rios-Mercado, Hugo Alvarez Lonzano, German Villegas-Mejia, Gerardo Tobon-Rojas and Fernando Zapata-Bermudez For Timely Disclosure of Impeaching Evidence and Jencks Material

The first three motions (A-D) were filed by counsel for Defendant Jose Hugo Alvarez Lozano.  The subsequent five joint motions (E-I) were filed by counsel for Defendants Jesus Antonio Murillo-Lenis, Ranfer Rios-Mercado, Hugo Alvarez Lonzano, German Villegas-Mejia, Gerardo Tobon-Rojas and Fernando Zapata-Bermudez,. Because all nine motions involve similar issues of fact and law, the government will address these motions in this subsection on discovery materials.

## A.  MOTION THAT PRIOR WITNESS STATEMENTS BE PROVIDED IN ORIGINAL  LANGUAGE

In his motion, Defendant Alverez Lozano requests the government provide defense counsel with all prior statements of each and every witness in the original

language of the witness well before trial. The Court should deny the defendant's motion as it exceeds the scope of disclosure required under the Jencks Act, 18 U.S.C. § 3500, and the defendant provides no legal justification for his request for early disclosure of this material. In accordance with the Jencks Act and the Federal Rules of Evidence, the government will disclose any prior witness statements, in their original language, that meet the requirements of the Jencks Act on the Thursday of the week before the witness testifies in court, in accordance with the accepted practice in this Circuit.

### I.      Defendant's Request for Early Disclosure Exceeds What Is Required By Law

First, defendant's request exceeds the scope of discovery required under Jencks. The Jencks Act does not require the government to disclose all prior statements of each and every witness, as the defendant requests. The Jencks Act only requires the government to disclose prior witness statements, in the government's possession, "which relate to the subject matter as to which the witness has testified." 18 U.S.C. § 3500(b). *See Robinson v. United States*, 825 A.2d 318, 326 (D.C. 2003) ("To be subject to disclosure under... Jencks, the defendant must request the statements, which must be within the possession of the government.").

Second, the defendant is not entitled to the disclosure of this requested material well before trial, pursuant to the Jencks Act and Rule 26 of the Federal Rules of Criminal Procedure. The Jencks Act stipulates that "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement (as hereinafter defined) of the witness which relates to the subject matter as to which the witness has testified." 18 U.S.C. § 3500 (b). Courts have regularly held that the Jencks Act's prohibition against disclosure of witness

statements prior to the completion of direct examination may not be ignored.  *See, e.g.,*
*United States v. Lewis*, 35 F.3d 148, 150-51 (4th Cir. 1994) (holding the district court
erred when it ordered the government produce all Jencks Act material prior to trial, as
"such an order is plainly inconsistent with the language of the Act"); *In re United States*,
834 F.2d 283, 287 (2d Cir. 1987) (holding "the district court had no inherent power to
modify or amend the provisions of...[the Jencks] Act"); *United States v. Spagnuolo*, 515
F.2d 818, 821 (9th Cir. 1975) (permitting district courts to compel disclosure contrary to
the language of the Jencks Act would frustrate the purpose of the Act); *United States v.
Beckford*, 962 F.Supp. 780, 787 (E.D.V.A. 1997) ("a district court may not order the
disclosure of Jencks material earlier than provided by statute"); *United States v.
Poindexter*, 727 F.Supp.1470, 1484 (D.C. 1989) (noting that even in a complex case, "the
government is technically not required to produce witness statements pursuant to the
Jencks Act, 18 U.S.C. § 3500, in advance of trial").

Additionally, Rule 26 of the Federal Rules of Criminal Procedure states, "[a]fter a
witness . . . has testified on direct examination, the court, on motion of a party who did
not call the witness, must order" the production of any relevant witness statement.  Fed.
R. Crim. P. 26.2(a).  Both Rule 26 and the Jencks Act establish that the defendant is not
entitled to a witness statement until after the witness has completed direct testimony.

## II.    The Government Will Comply With The Jencks Act and The Federal Rules of Evidence

The government will continue to provide the defendant with any prior witness
statement in its possession, relating to the subject matter of the witness's testimony, and
in its original language.  The government concedes that the prior witness statement must

be in the original language for impeachment under the Federal Rules of Evidence 801(d)(1)(A).

For the foregoing reasons, the government respectfully requests that the defendant's discovery request for information material beyond the obligations of the Jencks Act be denied. In accordance with the law, the government intends to disclose all witness statements in its possession, and in their original language, that relate to the subject matter of the witness testimony, on the Thursday before the witness testifies in court.

## B. <u>MOTION THAT GOVERNMENT OBTAIN PRIOR STATEMENTS OF WITNESSES LOCATED OVERSEAS</u>

In his motion, defendant Alvarez Lozano moves this Court for a standing order that all notes and prior statements of government witnesses located overseas be obtained by the government before trial so they may be disclosed pursuant to the Jencks Act, 18 U.S.C. § 3500. The defendant suggests that because the government is a party to multilateral treaties, and has access to or knowledge of foreign witnesses that exist overseas, the government should obtain all prior statements of these witnesses and retain them in the government's possession for potential disclosure under Jencks. The Court should deny defendant's motion for the following reasons: 1) the government has and will continue to comply with the requirements of the Jencks Act, which does not require disclosure of any Jencks material until trial, as previously addressed, and 2) the government is not obligated to act on behalf of the defendant and cannot be compelled to obtain this information for the defense.

### I.     The Government Will Continue To Comply With 18 U.S.C. § 3500

In accordance with the Jencks Act, 18 U.S.C. § 3500, the government will produce any prior statements of witness located overseas that relate to the subject of the witness testimony and are in the government's possession. *Robinson v. United States*, 825 A.2d 318, 326 (D.C. 2003) ("[t]o be subject to disclosure under... Jencks, the defendant must request the statements, which must be within the possession of the government.").

## II.    The Government Is Not Obligated To Obtain Information On Behalf of the Defendant

The defendant's motion requests that the Court order the government to locate all potential witnesses overseas and obtain all notes and prior statements of government witnesses; however, defendant lacks any legal support for this request and instead justifies it from the standpoint that the United States has better access to these statements and therefore should be required to gather evidence on behalf of the defendant.

The government will produce all overseas witness statements, in its possession, that relate to the subject matter of the witness testimony. However, the Court cannot compel the government to produce prior witness statements that are not in its possession and cannot require the United States to "ensure [his] access to witnesses outside the jurisdiction of the United States." *United States v. Sensi*, 879 F.2d 888, 898 (D.C. Cir. 1989). Nor can the United States be compelled to gather evidence for the defendant from third parties, regardless of whether they are private entities or sovereign nations. *United States v. Steurer*, 942 F. Supp. 1183, 1189-90 (N.D. Ill. 1996) (denying defendant's motion to compel production of *Brady* material that was in the possession of third parties), be they private entities or sovereign nations.

A similar motion by the defense occurred in *United States v. Gonzalez*, where the defendant made no specific requests for a particular witness's name or whereabouts, but instead asked in general terms for the names and addresses of all persons having knowledge pertaining to the facts of the case. 466 F.2d 1286 (5th Cir. 1972). Essentially, the defendant was asking the government to simplify his task of evidence-gathering, and in response the Fifth Circuit held that *Brady* does not impose on the prosecution a general duty to help the defense find witness that could potentially be favorable to the defendant. Furthermore, the government is not required to make files available to the defendant for an open-ended "fishing expedition." *United States v. Davis,* 752 F.2d 963, 976 (5th Cir.1985). The court in *Gonzalez* established that the "government is under no constitutional duty to assist the defendant in locating witnesses who have knowledge of the case, and therefore may be helpful, in some general way, to defendant's preparation." *United States v. Quinn***,** 364 F.Supp. 432, 444 (N.D.Ga. 1973) (holding that the defendant's request was similar to the request in *Gonzalez*, as it was extremely general and no particular need was demonstrated).

Like the defendant's motions in *Gonzalez and Quinn,* the defendant has not established a particular need and instead has provided an overbroad discovery request on a "fishing expedition" for witnesses located overseas.

The Court should deny the defendant's motion as the government is not required to obtain this information on behalf of the defendant and the government has and will continue to disclose any prior statements that fall under the purview of 18 U.S.C. § 3500.

## C.  MOTION FOR THE GOVERNMENT TO MAKE ALL LAW ENFORCEMENT AGENTS  AVAILABLE

In his motion, defendant Alvarez Lozano seeks to compel the government to identify all law enforcement agents who investigated the facts or present in interviews of prospective witnesses in this case.  The defendant's motion should be denied because the government is not required to make all law enforcement agents available or disclose any prior witness statements, beyond what is required under 18 U.S.C. § 3500, and the defendant has provided no persuasive legal justification for this over broad request.

### I.  Defendant Provides No Legal Justification For This Over Broad Discovery Request

The defendant, through his broad requests, seeks to compel the government to identify law enforcement agents and produce witness statements before trial, without providing any supporting legal authority for such a request.  Defendant's motion provides no detailed request or supporting legal authority.  Instead it suggests only a generalized desire for disclosure, relying on the assumption that the government should be obliged to "facilitate practical matters."  However, the defendant has his own avenues to obtain information and the government is not required to act on behalf of the defendant, as previously discussed.

The defendant simply suggests that in this international prosecution the government is required to ensure that the defendant's Constitutional rights are not abridged.  However, the right to confrontation of witnesses is a trial right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination, and does not create a right to pretrial discovery. *United States v. Mejia*, 448 F.3d 436 (D.C. Cir. 2006) (citing U.S.C.A. Const.Amend. 6).

II.    **The Government Is Not Required To Prematurely Disclose the Identities of Law Enforcement Agents and Related Prior Statements Beyond What Is Required Under 18 U.S.C. § 3500**

Specifically, in response to the request for the identification of law enforcement agents prematurely, it is well-established that a defendant is not generally entitled to know in advance of trial who will testify for the government. *United States v. McCullah,* 745 F.2d 350, 353 (6th Cir.1984).

In making the determination whether disclosure of a witness to a defendant is necessary, the Court must balance the public's interest in law enforcement and protecting the cooperating witness's identity against the defendant's right to prepare a defense. *Roviaro*, *supra*, 353 U.S. at 62; *United States v. Warren*, 42 F.3d 647, 654 (D.C. Cir. 1994). Courts do not order disclosure where such disclosure would place the witness in personal danger, as is the case here. *United States v. Pelton*, 578 F.2d 701, 707-08 (8th Cir. 1978), cert. denied, 439 U.S. 964 (1979). There is a strong interest in keeping the identities of these law enforcement agents confidential for their own protection until trial. *Jimenez v. Fed. Bureau of Investigation*, 938 F.Supp. 21, 30 (D.D.C.1996) (D.C. Cir. 1996) ("[i]t is in the public interest not to disclose the identity of special agents so that they may continue to effectively pursue their undercover and investigative assignments."). In general, the balance here weighs heavily against disclosing the identities and prior statements of law enforcement officials.

> In balancing a criminal defendant's need for such statements against legitimate state interests, Congress provided for discovery of statements only after the witness has testified, out of concern for witness intimidation, subornation of perjury, and other threats to the integrity of the trial process. [citations omitted] This congressional determination is not to be disregarded by the courts. "The Act supplies the only avenue to the materials it encompasses, and 'statements of a government witness made

to an agent of the Government which cannot be produced under the terms of 18 U.S.C. § 3500 ... cannot be produced at all.'"

*United States v. Tarantino*, 846 F.2d 1384, 1414 (D.C. Cir. 1988).

Finally, the burden is on the defendant "to show how disclosure of the informant would substantively assist his defense," and here the defendant has not met this burden. *United States v. Moore,* 954 F.2d 379, 381 (6th Cir.1992);   As noted, the defendant broadly requests the government make available all law enforcement agents who investigated facts or were present during interviews, and "[m]ere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure." *United States v. Sharp,* 778 F.2d 1182, 1187 (6th Cir.1985) (quoting *United States v. Gonzales,* 606 F.2d 70, 75 (5th Cir.1979)).

The Court should deny the defendant's motion as it is a generalized, over broad request that lacks any supporting legal authority.  As previously stated, in accordance with Jencks, the government will provide the defendant with the identity and prior statements in its possession, relating to the subject matter of the law enforcement agent testimony, the Thursday before the witness it to testify.

## D.  ALVEREZ-LOZANA MOTION FOR THE GOVERNMENT TO PRODUCE A SCHEMATIC OF INTERRELATEDNESS OF CONSPIRACY

The defendant's motion claims he is unable to discern the conspiracy in the case. Defendant therefore requests that the government provide a schematic of the conspiracy and the facts which place the defendant in a conspiracy.  The Defendant also requests that the government disclose co-conspirator statements.

The government opposes defendant's motion for a schematic. The defendant's motion is a request for a bill of particulars regarding the conspiracy. In a conspiracy case,

a bill of particulars may not be used to compel the government to provide the essential

facts regarding the existence and formation of the conspiracy. U*nited States v. Rosenthal*,

793 F.2d 1214, 1227 (11th Cir. 1986), opinion modified in part, 801 F.2d 378 (11th Cir.

1986), cert. denied, 480 U.S. 919 (1987); *United States v. Deaton*, 448 F. Supp. 532, 537

(N.D. Ohio 1978). Nor is the government required to specify every overt act it intends to

prove at trial. *Wong Tai v. United States*, 273 U.S. 77 (1926); *United States v. Carroll*,

510 F.2d 507, 509 (2d Cir. 1975), cert. denied, 426 U.S. 923 (1976); *United States v.

Rosenthal*, supra, 793 F.2d at 1227. In fact, as a practical matter, in a prosecution for

conspiracy under 21 U.S.C. §846, the government is not required to even prove an overt

act committed in furtherance of the conspiracy. *United States v. Long*, 449 F.2d 288, 294-

95 (8th Cir. 1971), cert. denied, 405 U.S. 974 (1972); *United States v. Armocida*, 515

F.2d 49, 54 (3d Cir. 1975), cert. denied, 423 U.S. 959 (1975).

The government opposes defendant's motion to disclose co-conspirator statements. In

*United States v. Roberts*, the en banc Fourth Circuit held that a defendant is not entitled to

coconspirator statements before trial, regardless of whether the government intends to

call that witness. 811 F.2d 257, 258-59 (4th Cir. 1987) (en banc) (per curiam). "When the

statements of a person other than defendant are sought, questions of witness safety arise."

Id. at 259. In Roberts, the defendant tried to distinguish between statements of witnesses

called at trial, and those who were not. Id. He claimed that since the witness was not

going to testify, "witness safety" was not an issue. Id. The Fourth Circuit rejected this

argument as "utterly unrealistic" because it "fails to recognize, among other things, that

the disclosure of co-conspirator statements may expose not only the declarant to threats

and intimidation, but also those expected to testify at trial concerning the declarant's

statements. This approach endangers government witnesses by circumventing the protections of the Jencks Act, and we reject it." Id.

Defendants' argument was also rejected by this circuit in *United States v. Davis*, 90 F.3d 490 (D.C. Cir. 1996) cert. denied 519 U.S. 1128 (1997). The *Davis* court, citing its rationale employed in *United States v. Tarantino*, 846 F.2d 1384, 1418 (D.C. Cir. 1988), held that Rule 16(a)(1)(A) could not be read to permit such discovery, implicitly because it would violate the balance chosen by Congress between the defendant's interest in use of non-witness materials and the government's interest in their non-disclosure." *Davis* at 513 (citations omitted). According to Davis, merely because one set of rules (internally consistent, one hopes) makes two distinct items equivalent for some specific purpose, it does not follow that they are equivalent for all related purposes. That a declarant's statement becomes a statement of the defendant under F.R.E. 801(d)(2)(E) does not mean it becomes the defendant's statement for purposes of F.R.Crim. Pro. 16(a)(1)(A), Tarantino; that a declarant is treated as a witness for purposes of Rule 801(d)(2)(E) or Rule 806 does not mean he becomes one for purposes of the Jencks Act. [FN30]

These same arguments apply with even greater force to defendant's request that he be "provided with all written or recorded statements and oral statements made in response to interrogation of those co-conspirators that the government will not call at trial." Moreover, the disclosure of witness statements prior to trial would be a violation of law. See *United States v. Tarantino*, 846 F.2d 1384, 1414 (D.C. Cir. 1988), cert. denied, 488 U.S. 867 (1989) ("Federal Rule of Criminal Procedure 16(a)(2) prohibits discovery of statements by government witnesses or prospective government witnesses except as provided in the Jenks Act, 18 U.S.C. § 3500." Under the Jenks Act statements made by

government witnesses are not open to discovery by the defense until the witness has testified on direct examination at the trial. 18 U.S.C. § 3500(a). Given that the law prohibits the early disclosure of witness statements, it should go without saying that the disclosure of individuals whom the government will not be calling as witnesses is similarly prohibited.

Wherefore, the Court should deny defendant's motion for a schematic of the conspiracy and disclosure of co-conspirators statements.

### E. MOTION FOR EARLY DISCLOSURE OF INFORMATION REGARDING CONFIDENTIAL INFORMANT WITNESSES, SPECIAL EMPLOYEE WITNESSES AND COOPERATING CRIMINALS

In his motion, defendant Alvarez-Lozano requests that the Court order immediate disclosure of informant witnesses, special employee witnesses, and cooperating criminals.  The Court should deny defendant's motion, as the defendant is not entitled to premature disclosure based on the security concerns inherent in this case.  The government has complied and will continue to comply with its discovery obligations as required by *Brady*, Rule 16, and the Jencks Act.

> **I.** **Defendant Is Not Entitled To Premature Disclosure of Witness Identities Under Applicable Law**

First, Brady and its progeny do not create a "general right to pretrial discovery" and instead simply require that disclosure be made "in time for use at trial." United States v. Presser, 844 F.2d 1275, 1283 (6th Cir. 1988); *United States v. Coppa*, 267 F.3d 132, 142 (2d Cir. 2001) (due process only requires that *Brady* material be disclosed "in time for effective use at trial.");  *United States v. Pollack,* 534 F.2d 964, 973 (D.C. Cir. 1976) ("[d]isclosure by the government must be made at such a time as to allow defense to use the favorable material effectively in the preparation and presentation of its case."); *United*

*States v. Ziperstein*, 601 F.2d 281 (7th Cir. 1979) ("[p]rinciples of *Brady* with respect to

concealment of favorable material by government do not require pretrial disclosure and,

as long as ultimate disclosure is made before it is too late for defendants to make use of

any benefits of evidence, due process is satisfied.").

Second, general discovery as provided under the Federal Rule of Criminal

Procedure 16, while not expressly stated "should be read and applied with a limitation of

reasonableness." *United States v. Freedman*, 688 F.2d 1364, 1366 (11th Cir. 1982)

(citing *United States v. Smith*, 371 F.Supp. 672 (D.C.N.C. 1973)). It is reasonable in this

case for the government to protect the identities of its informant witnesses, special

employee witnesses, and cooperating criminals when there is concern over their safety.

Therefore, the government intends to comply with its obligations under the law and

disclose witness identities within a reasonable timeframe, the Thursday of the week

before they testify.

## II.     Security Concerns Weigh Heavily Against Premature Identification of Witnesses In This Case

To begin with, the Government is not required to prematurely disclose the names

and locations of its witnesses.  The government enjoys a qualified, though "time-

honored" privilege to withhold the identity of its informants from criminal defendants.

*Roviaro v. United States*, 353 U.S. 53 (1957); *United States v. Brodie*, 871 F.2d 125, 128

(D.C. Cir. 1989).  The government may wait to disclose a witness's identity until trial.

*See, e.g., United States v. Foster*, 815 F.2d 1200, 1202-03 (8th Cir. 1987) (denial of

defendant's motion to disclose informant's identity proper where informant testified at

trial and was subject to cross-examination).

In making the determination whether disclosure of a witness to a defendant is necessary, the Court must balance the public's interest in law enforcement and protecting the cooperating witness's identity against the defendant's right to prepare a defense. *Roviaro*, *supra*, 353 U.S. at 62; *United States v. Warren*, 42 F.3d 647, 654 (D.C. Cir. 1994). The defendant bears the heavy burden of proving that disclosure of the witness's identity is necessary and relevant to the defense. *Id*. at 654; *United States v. Staufer*, 38 F.3d 1103, 1109 (9th Cir. 1994). To warrant disclosure and outweigh the risk of premature identification of witnesses, the defendant must "to show how disclosure of the informant would substantively assist his defense." *United States v. Moore,* 954 F.2d 379, 381 (6th Cir.1992). "Mere conjecture or supposition about the possible relevancy of the informant's testimony is insufficient to warrant disclosure." *United States v. Sharp,* 778 F.2d 1182, 1187 (6th Cir.1985) (quoting *United States v. Gonzales,* 606 F.2d 70, 75 (5th Cir.1979)).

Courts do not order disclosure where, as here, such disclosure would place an informant in personal danger and the prospective testimony is not exculpatory. *United States v. Pelton*, 578 F.2d 701, 707-08 (8th Cir. 1978), cert. denied, 439 U.S. 964 (1979). In this case the government has serious concerns for the safety of its witnesses. Most of these witnesses live openly in the Republic of Colombia, and those who live elsewhere still have family members who live in Colombia. These witnesses and their family members have little, if any, security or protection. Thus, they are at extreme risk due to their participation in this case. Although we have the will, neither the U.S. nor the Colombian governments have the ability to provide sufficient protection to these witnesses and their extended families. The threat to these individuals is greatest during

the time period between the day the government discloses their identity as witnesses and the day they actually testify.  The longer the span of time between those two dates, the greater the risk of witness intimidation.

Furthermore, providing the a witness list is not particularly important for jury selection.  Since it is very unlikely that any potential juror will know a witness who lives in Colombia, it will not be necessary to identify witnesses during jury selection.  Furthermore, the remote chance that a juror may know a Colombia witness can be addressed through more general jury selection questions regarding contacts with Colombia.

Finally, requiring the Government to disclose its witnesses prior to the swearing of the jury creates an unacceptable risk in the event the defendants then seek a continuance of the trial date – even a relatively short one.   If the trial is delayed, these witnesses and their families will have nowhere to go until the trial eventually begins and each witness completes his or her testimony.  It bears emphasis that all of the Government's witnesses are appearing voluntarily in the United States, and they will be much less likely to cooperate if the hardship on them is excessive or imposes additional security risks.

In light of these legitimate concerns, the defendant's request for disclosure of the identities of witnesses should be denied.  *See, e.g., United States v. Edwards*, 47 F.3d 841 (7th Cir. 1995) (witness identity not disclosed until time of testimony where there was substantial danger to witness); *United States v. Santiago,* 174 F.Supp2d 16 (S.D.N.Y. 2001) (where evidence of witness tampering defendant not entitled to witness list despite difficulty in preparing defense in a complex case); *United States v. Feola,* 651 F.Supp.

1068 (S.D.N.Y. 1987), *aff'd* 875 F.2d 857 (2d Cir.), *cert. denied*, 493 U.S. 834 (1989) (no witness list where such disclosure would endanger witnesses).

The defendant's motion reflects only a generalized desire to know the identity of all informants immediately to allow for overseas investigation, which is insufficient to justify placing these witnesses in danger by early disclosure of their identities. Therefore, in accordance with the law in the D.C. Circuit, the government intends to disclose the names and locations of witnesses on the Thursday of the week before they are scheduled to testify in Court.

## F.  JOINT MOTION TO ORDER MISSING DISCOVERY

In this joint motion, Defendants Jesus Antonio Murillo-Lenis, Ranfer Rios-Mercado, Hugo Alvarez Lonzano, German Villegas-Mejia, Gerardo Tobon-Rojas and Fernando Zapata-Bermudez request the Court order the government to produce a vast array of specified discovery items.  In response, the government has classified this evidence into three categories: 1) evidence not in the possession of the U.S. government, 2) evidence in the possession of the U.S. government, 3) evidence which should be disclosed under Federal Rule of Criminal Procedure 16(a)(1)(E-G).  To date, the government has provided the defendants with all discovery information in its possession, categorized by seizure date.  The government will first summarize the three general categories of evidence and will then proceed to address each particular item requested.

### I.    Evidence Not In the Possession of the U.S. Government

With respect to counts two, three, four, and five, the government has provided to the defense, pursuant to its obligations under Fed. R. Crim. P. 16(a)(1)(E-G),  any items and documents in its possession regarding these seizures.  However, these seizures were

conducted by the Columbian government, and all items retained by Columbian government remain in the possession of the Columbian government. The United States has no seized items in its possession at this time with respect to these counts, and thus is under no obligation to produce what it does not possess. However, the government is making all reasonable efforts regarding these seizures and has issued a Vienna Convention Request to the Columbian government requesting evidence relating to these seizures. If and when the government obtains these items, it will make them available to the defendants.

## II.    Evidence In The Government's Possession

With respect to count six, this seizure was conducted by United States Coast Guard, and any evidence seized which still exists, remains in the possession of the United States government. These items are currently located in the Southern District of Florida and the government is in the process of having the evidence from this seizure transported to Washington, D.C. in preparation for trial.   Upon its receipt the government will make this evidence available to the defendants.

## III.    Evidence In The U.S. Government's Possession That Meets The Requirements of Fed. R. Crim. P. 16(a)(1)(E-G)

To the extent that the defendant's specific requests fall within the gambit of Rule 16(a)(1)(E-G) of the Federal Rules of Criminal Procedure, the government has met its obligations and will continue to do so.   Defendants requests for "descriptions, significance" and other like terms do not fall within purview of Rule 16 and amount to nothing more than a bill of particulars by the defense. The government would refer the Court to our response in opposition to Defendant Perez Rincon's Motion For a Bill of

Particulars.  The government would reassert the same arguments made in its opposition to this earlier bill of particulars.

### IV.    Extradition and arrest materials

The government objects to this request as being outside the gambit of Rule 16(a)(1)(E-G) of the Federal Rules of Criminal Procedure.

### V.    Identification Procedures

The government objects to defendants request how voices will be identified, procedures used to identify the defendant this request as to the degree it is outside the gambit of Rule 16(a)(1)(E-G) of the Federal Rules of Criminal Procedure.  The government does not possess evidence related lineups or photo lineups and is unaware that any exist.  Defendant's request requesting how the government will prove its case such as voice identification is outside the scope of discovery.

The government does not possess any criminal records for the defendants except for one defendant.  The government will produce those records.

### VI.    Wiretap conversations

The government has provided to the defendant all information in its possession regarding the Colombian wiretaps.  The Government continues to attempt to receive additional information from the Colombian government.  The Government will provide any additional information regarding the Colombian wiretaps as it comes into the Government's possession.

The Court should deny the defendants' joint motion for a vast and extensive list of discovery items.  To the extent that any of the particularized requests fall within gambit

of Rule 16, the government will fulfill its obligation to disclose the requested material, as long as it satisfies the requirements of this discovery rule.

**G**. **JOINT MOTION TO COMPEL PRODUCTION OF ALL WIRETAP CALLS**

In this joint motion, the defendants Jesus Antonio Murillo-Lenis, Ranfer Rios-Mercado, Hugo Alvarez Lonzano, German Villegas-Mejia, Gerardo Tobon-Rojas and Fernando Zapata-Bermudez request the Court order the government to produce all wiretap conversations and related materials. Defendants allege that the computer discs received during discovery were not identical; however, they fail to specify the details regarding the alleged discrepancy. They also vaguely allege they do not currently have all available wiretap conversations, and that the government is being intentionally selective and filtering conversations it provides.

The government has turned over all wiretap conversations and related evidence in its possession at this time. However, the government is unable to respond to these allegations without further detail as to what information is inconsistent and what conversations they believe are missing.

**H. JOINT MOTION FOR TIMELY DISCLOSURE OF INFORMANT IDENTITIES**

In this joint motion, the defendants Jesus Antonio Murillo-Lenis, Ranfer Rios-Mercado, Hugo Alvarez Lonzano, German Villegas-Mejia, Gerardo Tobon-Rojas and Fernando Zapata-Bermudez request the Court order the government to disclose the identities of and contact information for the defense to interview informant witnesses. As previously stated, the defense is not entitled to early disclosure of this information, as the nature of this case and overarching security concerns weigh heavily against premature disclosure of informant identity, and therefore the Court should deny this motion.

## I.     Security Concerns Preclude Early Disclosure of Witness Identity

The government enjoys a qualified, though "time-honored" privilege to withhold the identity of its informants from criminal defendants. *Roviaro v. United States*, 353 U.S. 53 (1957); *United States v. Brodie*, 871 F.2d 125, 128 (D.C. Cir. 1989). In making the determination whether disclosure of a witness to a defendant is necessary, the Court must balance the public's interest in law enforcement and protecting the cooperating witness's identity against the defendant's right to prepare a defense. *Roviaro, supra*, 353 U.S. at 62; *United States v. Warren*, 42 F.3d 647, 654 (D.C. Cir. 1994). The defendant bears the heavy burden of proving that disclosure of the informant's identity is necessary and relevant to the defense. *Id*. at 654; *United States v. Staufer*, 38 F.3d 1103, 1109 (9th Cir. 1994).

The defendant has not met that burden here as the defendant only cites authority that supports a request for the "timely opportunity to interview" the witness.  The government intends to provide the defense with the witness identities a week before they are scheduled to testify in Court, both to protect the safety of these witnesses while simultaneously respecting the due process rights of the defendants.  *See United States v. Edelin*, 128 F.Supp.2d 23, 31 (D.D.C. 2001) (the Government was not required to disclose the names of government witnesses and related information to Defendants until the Thursday before each witness was to testify in trial where the defendants request "may jeopardize the life or safety of any person." 18 U.S.C. §3432.

For the foregoing reasons, in lieu of safety considerations, the defendants' motion for early disclosure of witness identities should be denied.

## I. JOINT MOTION FOR TIMELY DISCLOSURE OF IMPEACHING EVIDENCE AND JENCKS MATERIAL

In this joint motion, the defendants Jesus Antonio Murrillo Lenis, Ranfer Rios-Mercado, Hugo Alvarez Lonzano, German Villegas-Mejia, Gerardo Tobon-Rojas and Fernando Zapata-Bermudez request the Court order the government disclose impeaching or adverse information regarding witnesses, including: 1) all records and information regarding prior convictions and other impeaching/adverse information of witnesses, including law enforcement agents; 2) all information revealing prior misconduct or bad acts of each witness; 3) all promises or consideration given to a witness by the government or another country; 4) all threats or other coercion directed against witnesses; 5) records and information regarding drug or alcohol abuse by each witness; 6) prior dates witness has testified; 7) all prior inconsistent or false statements; 8) all investigation files compiled by the government on each witness; 9) all other records which could be helpful to the defense in impeaching the government witnesses; 10) Jencks Act material in advance of trial; and, 11) same records and information in 1-10 with respect to each non-witness declarant whose statements the prosecution intends to offer through testimony of other witnesses.  The Court should deny defendants' extensive list of discovery materials, as it exceeds the scope of discovery to which the defense is entitled under *Brady* and *Giglio*, the Jencks Act, and Fed. R. Crim. P. 16.

## I.     The Government Will Disclose Any Requested Information To the Extent That It Falls Within the Scope of Discovery Required By Law

In response to the Defendant's discovery motion, the Government will certainly fulfill its discovery obligations but notes that in confirming any specific requests beyond the scope of the Brady rule, Rule 16, and the Jencks Act, the Government does not waive

any limits proscribed within the Brady rule, Rule 16, the Jencks Act and relevant case law.

Under Fed. Rules Cr. Proc. Rule 16(a)(1) the Federal Government is required to produce the Defendant's relevant written and oral statements, prior record, and certain documents and objects upon the Defendant's request. Fed. Rules Cr. Proc. Rule 16(a)(2), however, prohibits the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case, and prohibits the discovery or inspection of statements made by government witnesses or prospective government witnesses except as provided in the Jencks Act, 18 U.S.C.A. § 3500. The Federal Rules of Criminal procedure require the production of the following five categories of evidence: (1) defendant's statements, Fed. R. Crim. P. 16(a)(1)(A); defendant's record, Fed. R. Crim. P. 16(a)(1)(B); documents and tangible objects, Fed. R. Crim. P. 16(a)(1)(c); reports of examinations and tests, Fed. R. Crim. P. 16(a)(1)(D); and expert witnesses, Fed. R. Crim. P. 16(a)(1)(E). "The central requirement of Rule 16(a)(1)(c)is that the defendant must show that the documents or evidence sought to be discovered are material to the preparation of his defense." Although this hurdle is not a high one, "the evidence must not simply 'bear some abstract logical relationship to the issues in the case. . . . There must be some indication that pretrial disclosure of the disputed evidence would [enable] the defendant significantly to alter the quantum of proof in his favor." Nonetheless, the documents need not directly relate to the defendant's guilt or innocence. Rather, they simply must "play an important role uncovering

admissible evidence, aiding witness preparation, corroborating testimony or assisting impeachment or rebuttal." *United States v. George*, 786 F.Supp. at 13 (D.D.C. 1991).

This articulation of the law was based, in part, on *United States v. Poindexter*, 727 F.Supp. 1470 (D.D.C. 1989), which stated:

> "The law is clear that the government is not required simply to turn all its files over to a defendant. Nor is it required to provide to the defendant evidence that is not exculpatory but is merely not inculpatory and might therefore form the groundwork for some argument in favor of the defense." Id. at 1485 (citations omitted).

Broad discovery requests are impossible for the government to respond to since the government does not know the theory and nature of the defense and is not expected to guess or predict what it might be. The United States is not required to guess and speculate at what legal "defenses" might be available in this case. Sweeping requests for discovery are not cognizable under either *Brady v. Maryland, supra,* or Fed. R. Crim. P. 16. *See, United States v. Bagley,* 473 U.S. 667, 675, (1985); *United States v. Agurs*, 427 U.S. 97 (1976); *Jencks v. United States*, 353 U.S. 657, 667, (1957); *United States v. Williams*, 580 F.2d 578, 585 (D.C. Cir. 1978), *cert. denied,* 439 U.S. 832 (1978).  The government is not required to make files available to the defendant for an open-ended "fishing expedition." *United States v. Davis,* 752 F.2d 963, 976 (5th Cir.1985).

The government objects to the production of impeachment materials at this time. While under Brady and its progenies, the government has a constitutional duty to turn over impeachment materials, "(t)here is nothing in *Brady* or *Agurs* to require that such disclosures be made before trial." *United States v. McPartlin*, 595 F.2d 1321, 1346 (7th Cir.), *cert. denied*, 444 U.S. 833 (1979); *United States v. Engram*, 337 A.2d 488 (D.C.

Cir. 1975) (prior conviction and arrest records of witnesses do not need to be turned over

prior to trial).

## MOTIONS: SUBSTANTIVE.

Defendants have filed five motions raising substantive issues.

A.    Defendants' Rios-Mercado, Villegas-Mejia, Tobon-Rojas and Zapata-Bermudez Joint Motion to Sever Count Four.

B.    Defendants Jesus Antonio Murillo-Lenis, Ranfer Rios-Mercado, Hugo Alvarez Lonzano, German Villegas-Mejia, Gerardo Tobon-Rojas and Fernando Zapata-Bermudez Motion to Dismiss Indictment on Due Process Grounds.

C.    Defendants Jesus Antonio Murillo-Lenis, Ranfer Rios-Mercado, Hugo Alvarez Lonzano, German Villegas-Mejia, Gerardo Tobon-Rojas and Fernando Zapata-Bermudez Motion for Preliminary Determination of Conspiracy and Pretrial Ruling on the Admissibility of Coconspirators Statements Pursuant to Federal Rule of Evidence 801(d)(2)(E).

D.    Defendants Ranfer Rios-Mercado, German Villegas-Mejia, Gerardo Tobon-Rojas and Fernando Zapata-Bermudez Motion to Dismiss Count One, or in the Alternative, Motion for a Bill of Particulars.

E.    Defendants Jesus Antonio Murillo-Lenis, Ranfer Rios-Mercado, Hugo Alvarez Lonzano, German Villegas-Mejia, Gerardo Tobon Rojas and Fernando Zapata-Bermudez Joint Motion to Suppress Evidence.

## A. JOINT MOTION TO SEVER COUNT FOUR

In this joint motion, Defendants, Ranfer Rios-Mercado, German Villegas-Mejia,

Gerardo Tobon-Rojas and Fernando Zapata-Bermudez seek to sever Count Four of the

indictment upon a claim that Count Four appears unrelated to the other Counts in the

Indictment.  The government opposes defendants' motion.

The defendants contend that these counts were improperly joined under Rule 8 of

the Federal Rules of Criminal Procedure.  Motion at 3.  In co-defendant cases, Federal

Rule of Criminal Procedure 8(b) controls joinder of both offenses and defendants.  *United*

*States v. Perry*, 731 F.2d 985, 989 (D.C. Cir. 1984); *United States v. Jackson*, 562 F.2d 789, 793-94 (D.C. Cir. 1977). This Circuit construes Rule 8(b) broadly in favor of joinder. *United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991) ("[T]his circuit's law makes it difficult to prevail on a claim that there has been a misjoinder under Rule 8(b)").

Rule 8(b) directs that "[t]wo or more defendants may be charged in the same indictment . . . if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed R. Crim P. 8(b). The District of Columbia Circuit has held that acts or transactions form a "series" within the meaning of Rule 8(b) if they "are connected together or constitute[e] part of a common scheme or plan." *Perry*, 731 F.2d at 990 (internal quotation marks and citations omitted). The touchstone for analysis under Rule 8(b) is whether "a logical relationship between the acts or transactions within the series." *Nicely*, 922 F.2d at 853.

Rule 8(b) requires only that the government 'allege,' not prove, the facts necessary to sustain joinder." *United States v. Halliman*, 923 F.2d 873, 883 (D.C. Cir. 1991) (citations omitted). In determining the propriety of joinder, "this circuit permits a trial court to consult the indictment as well as any other pretrial evidence offered by the Government." *United States v. Spriggs*, 102 F.3d 1245, 1255 (D.C. Cir. 1997) (quoting *United States v. Wilson*, 26 F.3d 142, 153 (D.C. Cir. 1994)).

The D.C. Circuit has expressed a strong preference for joinder of conspiracy charges and defendants. *United States v. Edelin*, 118 F. Supp. 2d 36, 40 (D.D.C. 2000). *See United States v. Richardson*, 167 F.3d 621, 624 (D.C. Cir. 1999), quoting *United States v. Ford*, 870 F.2d 729, 731 (D.C. Cir. 1989). This preference reflects the sound

policy of joinder where charges may be proven with substantially the same evidence. *Edelin*, 118 F. Supp. at 40.

Joint trials are also preferred for judicial efficiency and consistent verdicts. *Buchanan v. Kentucky*, 483 U.S. 402, 418 (1987). ("In joint trials, the jury obtains amore complete view of all the acts underlying the charges than would be possible in separate trials. From such a perspective, it may be able to arrive more reliably at its conclusions regarding the guilt or innocence of a particular defendant and to assign fairly the respective responsibilities of each defendant in sentencing."). The Supreme Court has stated that "[t]here is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro v. United States*, 113 S.Ct. 933, 937 (1993) (mutually antagonistic defenses did not require severance). That is because joint trials promote judicial efficiency and help protect against the unfairness of inconsistent verdicts. Id. at 937. This is especially true when defendants are charged with committing the same crimes and the evidence will largely be the same.

The defendants in this case were properly joined based on their concerted participation in the charged conspiracy. Joinder is proper where the defendants are alleged to have participated in the same series of acts constituting the lead offense. *United States v. Colatriano*, 624 F.2d 686, 688 (5th Cir. 1980); *United States v. Heck*, 499 F.2d 778, 789 (9th Cir.) (defendants properly joined who participated in a conspiracy and assault on federal officials), cert. denied, 419 U.S. 1088 (1974); *United States v. Becker*, 569 F.2d 951, 964 (5th Cir.) (defendants were properly joined where they were charged with conspiracy to defraud, wire fraud, and interstate transportation of checks), cert. denied, 439 U.S. 865 (1978).

A trial judge has wide discretion in determining severance. *United States v. Butler*, 922 F.2d 1191, 1196 (D.C. Cir. 1987). One of the main factors the Court should consider in making a severance determination is to insure the judicial system's strong and legitimate interest in efficient and expeditious proceedings. *United States v. Long*, 905 F.2d 1572 (D.C. Cir. 1990). Joinder of counts and defendants is designed to promote judicial economy and efficiency by avoiding multiple trials, where that can be accomplished without substantial prejudice to the rights of the defendant to a fair trial. *Bruton v. United States*, 391 U.S. 123, 131 n.6 (1968). Factors the court should consider include: (1) the presentation of the same evidence; (2) testimony from the same witnesses; and (3) the same illegal acts. *United States v. Manner*, 997 F.2d 317 (D.C. Cir. 1989); *United States v. Tarantino*, 946 F. 2d 1384 (D.C. Cir. 1988).

Generally, persons charged in a conspiracy should be tried together. E.g., *United States v. Boyd*, 610 F.2d 521 (8th Cir. 1979), cert. denied, 444 U.S. 1089 (1980). "Rarely, if ever, will it be improper for co-conspirators to be tried together." *United States v. Stephenson*, 924 F.2d 753, 761 (8th Cir. 1991). Furthermore, severance is not required or favored even when all co-conspirators are not charged in every substantive count of the indictment, *Schaffer v. United States*, 362 U.S. 511, 512-513 (1960); *United States v. Leach*, 613 F.2d 1295, 1303 (5th Cir. 1980), or when the charged co-conspirators did not participate in all phases of the conspiracy. *Blumenthal v. United State*s, 332 U.S. 539, 556-557 (1947); *Leach*, supra, 613 F.2d at 1299. There is no mandate that severance be granted if one defendant's role was smaller or less important than another's. *United States v. Nersesian*, 824 F.2d 1294 (2d Cir. 1987); *United States v. Ianniello*, 621 F. Supp. 1455, 1477-78 (S.D.N.Y. 1985), aff'd, 808 F.2d 84 (2d Cir. 1986), cert. denied, 483 U.S. 106

(1987) (fact that defendant plays minor role in a conspiracy does not entitle him to severance). Where the court instructs the jury about the limited admissibility of co-conspirator statements and to consider each count and the evidence against each defendant separately, severance is not required. *United States v. Cuesta*, 597 F.2d 903 (5th Cir.), cert. denied, 444 U.S. 964 (1979).

In *United States v. Persic*o, 621 F. Supp. 842 (S.D.N.Y. 1985), the court set forth three justifications for denying severance in a complex RICO case which are equally applicable in this case: (1) A joint trial permits the jury to hear a comprehensive presentation of the entire enterprise and roles played by each participant; (2) A joint trial prevents delays of separate successive trials serving the interests of the government and the defendant; and (3) A joint trial promotes the safety of the witnesses who would be called at successive trials to repeat their testimony. Id. at 852.

The defendant bears the burden of proving prejudicial joinder under Fed. R. Crim. P. 14(b). *United States v. Spitler*, 800 F.2d 1267 (4th Cir. 1986). In making this determination, the Court must balance the risk of prejudice to the defendant against the interest in judicial economy. *Butler*, supra, 822 F.2d at 1194. However, the risk of prejudice must be compelling. *United States v. Cross,* 928 F.2d 1030 (11th Cir. 1991). The test for determining "compelling prejudice" is the jury's ability to follow the trial court's instruction and separate evidence relating to each defendant. *United States v. Cross*, 928 F.2d at 1030; see also United States v. Leavitt, 878 F.2d 1329 (11th Cir. 1989). With the Court's careful instructions, the jury will be able to separate the defendants' charges from those against other co-conspirators. Id.; *United States v. Dellacroce*, 625 F.Supp. 1387, 1392 (E.D.N.Y. 1986).

Consequently, the government respectfully requests the Court deny defendants' motion.

## B.  <u>MOTION TO DISMISS INDICTMENT ON DUE PROCESS GROUNDS</u>

In this joint motion, the defendants Jesus Antonio Murillo-Lenis, Ranfer Rios-Mercado, Hugo Alvarez Lonzano, German Villegas-Mejia, Gerardo Tobon-Rojas and Fernando Zapata-Bermudez seek a dismissal of the indictment on a claim that they have been denied discovery in the case which violates the Due Process Clause of the Fifth Amendment.  The government opposes the Motion to Dismiss on Due Process Grounds.

The government absolutely and categorically denies that the defendants have been denied discovery in this case.  The government, acknowledging all of it discovery obligations, has made available to defendants discovery in its possession, continues to make all attempts to obtain additional discovery from the Colombian government and continues to procure discovery which is in the government's possession but, not physically present in Washington, D.C.

Defendants' due process rights have not been violated.  There has been no allegation of "bad faith" on the government's part by the defendants. See *Arizona v. Youngblood*, 488 U.S. 51, 56-58 & n.* (1988), the loss of discoverable evidence by the government does not rise to the level of a due process violation unless: (i) the government failed, in bad faith, to preserve; (ii) material and potentially exculpatory evidence. See also *California v. Trombetta*, 467 U.S. 479, 488-489 (1984); *United States v. McKie*, 951 F.2d 399, 403 (D.C. Cir. 1991).   See also *United States v. Lewis*, 40 F.3d 1325, 1341 (1st Cir. 1994) (appellant failed to demonstrate that factual inaccuracies in a police report resulted from bad faith; "[n]o police investigation is entirely perfect, and

minor inconsistencies do not support" the contention that the officers "used bad faith and colluded").

The government is making all reasonable efforts to determine if there is additional discoverable evidence not in its possession.  It is clear that the government must produce all discoverable evidence in its possession.  That government has produced all discoverable evidence in its possession and will continue to do so, if any, additional discoverable evidence comes into its possession.  The government understands the frustration of defense counsel, but this case is unlike most other drug conspiracy cases.  It is not a District of Columbia based drug conspiracy case which defense counsel are most likely familiar.

This is an international cocaine trafficking conspiracy in which the defendants thought they could operate from the believed "safe refuge" of Colombia and send cocaine to the United States.  Consequently, the investigation and a large part of the evidence recovered were done by Colombian law enforcement.  The processes and procedures of a criminal investigation in Columbia may not be similar to those of American law enforcement, such as, the number and type of reports generated by an investigation.  The government must rely on international protocols to obtain evidence through Vienna Convention Requests (VCR) for evidence.  The government has issued VCRs in this case and will continue to do so in an effort obtain discoverable evidence.  In fact, the difficulty of this process is contemplated in the Speedy Trial Act, which allow for waiver of Speedy Trial time if a request for foreign evidence, such as a VCR, by the government is pending.  Consequently, the government requests the Court deny defendants motion.

**C.  MOTION FOR PRELIMINARY DETERMINATION OF CONSPIRACY AND PRETRIAL RULING ON THE ADMISSIBILITY OF COCONSPIRATORS STATEMENTS PURSUANT TO FEDERAL RULE OF EVIDENCE 801(d)(2)(E)**

In this joint motion, the defendants Jesus Antonio Murillo-Lenis, Ranfer Rios-Mercado, Hugo Alvarez Lonzano, German Villegas-Mejia, Gerardo Tobon-Rojas and Fernando Zapata-Bermudez seek a pretrial determination by the Court of the existence of a conspiracy and the admissibility of statements admissible under FRE 801(d)(2)(E).  The government opposes defendants' motions.

The case law in this and other jurisdictions counsels that such a suggestion be rejected. Appellate courts have routinely upheld the practice of deferring the determination of a defense motion until the trial if that motion requires "deciding issues of fact that are inevitably bound up with evidence about the alleged offense itself." *United States v. Wilson*, 26 F.3d 142, 159 (D.C. Cir. 1994), cert. denied, 514 U.S. 1051 (1995). See also *United States v. Gantt*, 617 F.2d 831, 845 (D.C. Cir. 1980) (in upholding trial court's refusal to hold pretrial hearing into the existence of a conspiracy so as to determine admissibility of statements under coconspirators' exception to hearsay rule, D.C. Circuit explained that "[a]s a practical matter, to avoid what otherwise would become a separate trial on the issue of admissibility, the court may admit declarations of co-conspirators 'subject to connection'"); see also *United States v. Jackson*, 627 F.2d 1198, 1218 (D.C. Cir. 1980) (trial courts are not required to hold "mini-trials" on the conspiracy issue before the conditional admission of a co-conspirator's statements). This is particularly true when the defense motion is nothing more than an attack on the sufficiency of the evidence--a motion for judgment of acquittal in limine. In that case, the presumption accorded a facially valid indictment overrides the defendant's interest in

having a preliminary review of the evidence and compels him to await the conclusion of

the government's case before seeking relief based upon an argument of insufficient

evidence.

### D.  MOTION TO DISMISS COUNT ONE, OR IN THE ALTERNATIVE MOTION FOR A BILL OF PARTICULARS

In this motion, defendants Ranfer Rios-Mercado, German Villegas-Mejia,

Gerardo Tobon-Rojas and Fernando Zapata-Bermudez claim they are unable to discern

the conspiracy and consequently move the Court to dismiss Count One of the Third

Superseding indictment or, alternatively, move for a Bill of Particulars with a claim of

duplicity.  The government opposes defendants' motion.

The defendants' in their motion claim that Count One is duplicitous.  The

defendant's argument that such a charge is duplicitous has been rejected by the Supreme

Court years ago. "Whether the object of a single agreement is to commit one or many

crimes, it is in either case that agreement which constitutes the conspiracy which the

statute punishes. One agreement cannot be taken to be several agreements and hence

several conspiracies because it envisages the violation of several statutes rather than one."

*Breverman v. United States*, 317 U.S. 49, 63 S.Ct. 99, 101 (1942) "An indictment may

charge in one count a single conspiracy to violate more than one substantive criminal

statute." *United States v. Garcia*, 27 F.3d 1009, 1016 (5th Cir. 1994) "[t]he existence of a

single or multiple conspiracies is primarily a question of fact for the jury." *United States

v. Childress*, 58 F.3d 693, 709 (D.C. Cir. 1995) (quoting *United States v. Tarantino*, 846

F.2d 1384, 1391 (D.C. Cir.), cert. denied, 488 U.S. 840, 867 (1988)), cert. denied, 116 S.

Ct. 825 (1996).Defendants' claims of lack of knowledge regarding the conspiracy are not

surprising.  "[w]here large quantities of [drugs] are being distributed, each major buyer

may be presumed to know that he is part of a wide-ranging venture, the success of which depends on performance by others whose identity he may not even know." United States v. Dickey, 736 F.2d 571, 582 (10th Cir.), (quoting United States v. Watson, 594 F.2d 1330, 1340 (10th Cir.), cert. denied, 444 U.S. 840 (1979)). The government need not prove a direct connection among all the conspirators, nor that each knew the others. Childress, 58 F.3d at 709- 10 ("Courts have long recognized that participants in a continuous drug distribution enterprise can be parties to a single conspiracy even if they do not all know one another, so long as each knows that his own role in the distribution of drugs and benefits he derives from his participation depend on the activities of the others"). A defendant may also be charged in a single conspiracy even if he was active in furthering only a limited part of the conspiracy. "That the indictment did not charge the appellants with active participation in each phase of the conspiracy does not effect misjoinder....as long as it alleges knowledge of the conspiracy's essential nature." *United States v. Acosta*, 763 F.2d 671, 696 (5th Cir. 1985) citing United States v. Metz, 608 F.2d147, 152 (5th Cir.1979), cert. denied, 449 U.S. 821 (1980) See also *United States v. Hass*, 150 F.3d 443, 448 (5th Cir. 1998) (Although defendants acted independently at times, it was appropriate to indict under a single overarching conspiracy).

Even if the defendants could have been indicted for multiple conspiracies rather than the one for which they have been charged, this would not be grounds either for dismissing the pending count or for reversing a conviction on it. The ultimate determination as to the scope and number of conspiracies in a case is to be made by a jury after it has heard the evidence at trial. "Whether the evidence shows one or multiple conspiracies is a question of fact for the jury....We will affirm the jury's finding that the

Government proved a single conspiracy unless the evidence and all reasonable inferences, examined in the light most favorable to the Government, would preclude reasonable jurors from finding a single conspiracy beyond a reasonable doubt." *United States v. Morrow,* 177 F.3d 272, 270 (5th Cir. 1999). The defendant's objection to the single conspiracy charged in the Indictment is, therefore, not a basis for dismissal. The enumeration of conspiracies in a case is a judgment that the courts have left to the grand jury in its indictment and to the jury in its verdict.

Defendants, alternatively, have moved for a bill of particulars. The Government would adopt and refer the Court to the Government's Response in Opposition to a Bill of Particulars filed in response to Defendant Perez-Rincon's Motion for Bill of Particulars. The government would reassert the same arguments made in its opposition.

Consequently, the government respectfully requests the Court deny defendants' motion.

**E.  JOINT MOTION TO SUPPRESS EVIDENCE**

In this motion, Jesus Antonio Murillo-Lenis, Ranfer Rios-Mercado, Hugo Alvarez Lonzano, German Villegas-Mejia, Gerardo Tobon Rojas and Fernando Zapata-Bermudez seek to suppress evidence based upon a claim of "joint venture." Defendants argue that the evidence obtained in Colombian by the Colombian law enforcement was done by working jointly with the United States, specifically the Drug Enforcement Administration (DEA). The government objects to defendants' motion to suppress.

All of the evidence obtained in this case, with the exception of evidence relating to the cocaine seizure which Count Six is based upon (the M/V Dan Viking seizure by the U.S. Coast Guard), was done so by Colombian law enforcement and was not a product of

36

a joint venture with the DEA.

The telephone recordings and physical evidence, relating to Counts One through Five, were done by Colombian law enforcement.  The DEA's involvement with Colombian law enforcement authorities in the investigation, operation of the wiretaps, searches and seizures were minimal, at best.  The DEA does not have operational, supervisory, or managerial control over the investigation in this case.  The DEA does assist with financial funding to Colombian law enforcement.  But, that funding does not result in or allowing the DEA to maintain control over the investigations.   DEA would meet with their counterparts in the Colombia law enforcement who would apprise them of the progress of the investigation.  Again, at these meetings the DEA did not exercise any control over the Colombian law enforcement.  At no time did DEA actively participate in the investigation.

## I.     Defendant's Standing

In their motion to suppress, the defendant alleges that the evidence obtained in Colombia by Colombian law enforcement violated their Fourth Amendment rights and should be suppressed.  The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure.  As a threshold matter, the Government argues that Appellant must establish standing to contest a search.  "As noted by the district court, Appellant initially has the burden of proof by a preponderance of evidence that they individually have standing to bring a claim that the contents of a vehicle were seized illegally under the Fourth Amendment."  *United States v. Riazco*, 91 F.3d 752, 754 (5th Cir. 1996) Appellant carries the burden of proving the extent of his Fourth Amendment rights from

the outset.  *Rakas v. Illinois*, 439 U.S. 128 (1978), made this crystal clear:  "The

proponent of a motion to suppress has the burden of establishing that his own Fourth

Amendment rights were violated by the challenged search or seizure." 439 U.S. at 131,

n.1. See also, *United States v. Caicedo-Llanos*, 960 F.2d 158, 162-163 (D.C. Cir. 1992).

In *Caicedo-Llanos*, the Court could not have said more plainly that the burden to prove a

legitimate expectation of privacy is the defendant's, and any "failure to raise the issue

before the District Court [is] appellant's own." 960 F.2d at 162; accord *United States v.*

*Hansen*, 652 F.2d 1374, 1381-1382 (10th Cir. 1981); *United States v. Miller*, 636 F.2d

850, 853-854 (1st Cir. 1980); see also *United States v. Cardona*, 955 F.2d 976, 982 (5th

Cir.) (where defendant introduced no facts from which expectation of privacy reasonably

could be inferred, government may raise issue for first time on appeal), cert. denied, 113

S. Ct. 381 (1992).

Consequently, the first matter that needs to be addressed is that of the defendant's

standing.  In order for the Fourth Amendment to be applicable the defendant must

establish his standing regarding the recorded telephone conversations and the seizures by

Colombian law enforcement.

## II.    Applicability of the Fourth Amendment to Foreign Searches and Seizures

Assuming arguendo, the defendant establishes standing, he may seek the

protections of the Fourth Amendment.  The defendant argues that the investigation and

his arrest was a "joint venture" between the DEA and Colombian law enforcement, also

known as Colombian National Police (CNP).  The DEA, in this case, did not participate

in the investigation of the defendant to a degree which rendered it a "joint venture."

In *United States v. Verdugo- Urquidez*, 494 U.S. 259 (1990), the Supreme Court held that the Fourth Amendment does not apply to searches and seizures of property owned by nonresident aliens and located in a foreign country. Accordingly, at present there are two instances in which the Fourth Amendment does not apply to searches conducted in foreign countries: 1) if the search is conducted exclusively by foreign authorities in their own country, and 2) if the search-no matter who conducts it-is of property owned by a nonresident alien.

For United States citizens and resident aliens, the Fourth Amendment applies to foreign searches and seizures: (1) conducted exclusively by the United States government, (2) conducted by the United States in a "joint venture" with foreign authorities, or (3) where foreign authorities act as agents for the United States. Finally, a district court may exclude evidence if the circumstances of the foreign search are so extreme that they "shock the judicial conscience." In this case, the defendant makes no such "shock the judicial conscience" allegation.

The Fourth Amendment does not apply to foreign searches and seizures by foreign officials, even if the search is directed against a United States citizen. *United States v. Rose*, 570 F.2d 1358, 1361 (9th Cir. 1978) (citing *Birdsell v. United States*, 346 F.2d 775, 782 (5th Cir. 1965)). According to the Ninth Circuit, "[n]either the Fourth Amendment of the United States Constitution nor the exclusionary rule of evidence, designed to deter federal officers from violating the Fourth Amendment, is applicable to the acts of foreign officials." *Stonehill v. United States*, 405 F.2d 738, 743 (9th Cir. 1968). See also *United States v. Rosenthal*, 793 F.2d 1214, 1230 (11th Cir. 1986) (citing *Government of Canal*

*Zone v. Sierra*, 594 F.2d 60 (5th Cir. 1979)).  One reason for this rule is "the doubtful deterrent effect on foreign police practices that might follow from a punitive exclusion of the evidence by an American court." *Rose*, 570 F.2d at 1361-62.

Since the Fourth Amendment does not apply, and there is no Fourth Amendment reasonableness inquiry by a district court, when foreign officials, acting on their own, do not follow their own law in obtaining evidence, United States courts may still allow the admission of such evidence if the circumstances surrounding its collection do not shock the conscience of the court.  *United States v. Barona*, 56 F.3d 1087, 1091 (9th Cir. 1995); *Stonehill*, 405 F.2d at 746.

The Fourth Amendment does not protect nonresident aliens.  *Verdugo-Urquidez*, 494 U.S. at 274-75.  In *Verdugo*, the Supreme Court held that the Fourth Amendment does not apply to search and seizure by United States agents of property that is owned by a nonresident alien and located in a foreign country.  In reaching its decision in *Verdugo*, the Court found that the Fourth Amendment protects only "the people of the United States." Id. at 265.  This term "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." Id.  Accordingly, the Fourth Amendment does not apply to searches and seizures (including wiretaps) involving nonresident aliens conducted by United States agents in a foreign country. Similarly, "[t]he Fourth Amendment does not apply to the search of non-resident aliens on a ship in international waters." *United States v. Aikins*, 946 F.2d 608, 613 (9th Cir. 1990).

When conducted by, on behalf of, or jointly with the United States government, the Fourth Amendment applies to searches and seizures against United States citizens and

resident aliens while abroad. See generally, *Barona*, 56 F.3d at 1091; *United States v. Behety*, 32 F.3d 503, 510 (11th Cir. 1994); *Rose*, 570 F.2d at 1362; *United States v. Maturo*, 982 F.2d 57, 61 (2d. Cir. 1992); *United States v. Mitro*, 880 F.2d 1480, 1482 (1st Cir. 1989); *United States v. Morrow*, 537 F.2d 120, 139 (5th Cir. 1976). United States law determines the admissibility of evidence obtained by United States agents in a foreign country. *United States v. Juda*, 46 F.3d 961, 968 (9th Cir. 1995); *Verdugo-Urquidez*, 494 U.S. at 283 n.7 (Brennan, J., dissenting).

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Accordingly, a district court reviewing a foreign search involving a United States citizen or resident alien must determine whether the foreign search conducted by United States law enforcement agents was "reasonable" under the Fourth Amendment.

There is no statutory basis for the issuance of a warrant in the United States to conduct searches abroad. Rule 41(b) of the Federal Rules of Criminal Procedure limits the jurisdiction of a federal magistrate to searches "within" the magistrate's federal district. According to the Supreme Court's decision in *Verdugo*, a search warrant of a federal magistrate "would be a dead letter outside the United States." 494 U.S. at 274. See also, id. at 278 (Kennedy, J., concurring) (explaining that several factors counsel against overseas application of the warrant requirement including "the absence of local

judges or magistrates available to issue warrants, the differing and perhaps unascertainable conceptions of reasonableness and privacy that prevail abroad, and the need to cooperate with foreign officials"); Id. at 279 (Stevens, J., concurring) (concluding that the warrant clause does not apply to overseas searches of noncitizens' homes because of the powerlessness of American magistrates to authorize such searches).

The Fourth Amendment applies to foreign searches and seizures conducted against United States citizens and resident aliens in three situations:  (1) where the search is conducted exclusively by United States agents, *United States v. Conroy*, 589 F.2d 1258, 1264 (5th Cir. 1994); (2) where foreign law enforcement agents act on behalf of the United States government, *Rose*, 570 F.2d at 1362; and (3) where the United States sufficiently participates in the search such that it represents a "joint venture," *Behety*, 32 F.3d at 510.  There is no single test for what constitutes a joint venture.  According to the Ninth Circuit, "the Fourth Amendment could apply to raids by foreign officials only if Federal agents so substantially participated in the raids so as to convert them into joint ventures between the United States and the foreign officials." *Stonehill*, 405 F.2d at 743. According to the Fifth Circuit, the Fourth Amendment is "inapplicable to an action by a foreign sovereign in its own territory in enforcing its own laws, even though American officials were present and cooperated in some degree." *Birdsell*, 346 F.2d at 782.  To decide whether a joint venture has occurred, a court must closely "scrutinize the attendant facts." *Byars v. United States*, 273 U.S. 28, 32 (1927).

In the Fifth circuit, compliance or noncompliance with local foreign law has not been dispositive in determining the reasonableness of foreign searches under the Fourth Amendment.  See *Conroy*, 589 F.2d at 1265 ("[t]he mere consent of foreign authorities to

a seizure that would be unconstitutional in the United States does not dissipate its

illegality even though the search would be valid under local law").  In the Ninth Circuit,

however, "compliance with foreign law alone determines whether [a] search violated the

Fourth Amendment."  *Barona*, 812 F.3d at 1093.  According to that circuit, a joint

venture foreign search is reasonable if it conforms to the requirements of foreign law,

*Juda*, 46 F.3d at 968 (citing United *States v. Peterson*, 812 F.2d 486, 491 (9th Cir. 1986)

and *Barona*, 56 F.3d at 1096), and a joint venture search is unreasonable under the Fourth

Amendment if it does not comply with foreign law.  *Peterson*, 812 F.2d at 491.

  Even if a search does not comply with foreign law, however, it is United States

law that "governs whether illegally obtained evidence should be excluded, and the

essence of [the court's] inquiry is whether exclusion serves the rationale of deterring

federal officers from unlawful conduct." 812 F.2d at 491.  If foreign law was not

complied with, a search may be upheld under the good faith exception to the exclusionary

rule when United States officials reasonably rely on foreign officials' representations of

foreign law. *Id*. at 492.  According to the Ninth Circuit, "[t]he good faith exception is

grounded in the realization that the exclusionary rule does not function as a deterrent in

cases in which the law enforcement officers acted on a reasonable belief that their

conduct was legal." *Id.* See also, <u>Juda</u>, 46 F.3d 961.

## III. <u>Joint Venture</u>

  Title III of the Omnibus Crime Control and Safe Streets Act of 1968 does not

apply outside the United States and therefore does not apply to foreign wiretaps. *Maturo*,

982 F.2d 57.  Standing to contest the extraterritorial search is therefore determined by the

Fourth Amendment. *Id.* See also *Barona*, 56 F.3d at 1090-91 (Title III of the Ominibus

Crime Control and Safe Streets Act of 1968 has no extraterritorial force and therefore standing is guided by the applicable principles of constitutional law).

Foreign evidence is admissible when foreign officials acting on their own to enforce foreign law properly follow their own law in obtaining the evidence, even where the subject of the foreign search is an American citizen. *Maturo*, 982 F.2d at 59. In *Maturo* the court held that the wiretap investigation by Turkish National Police was not a joint venture with agents from the Drug Enforcement Agency even though the DEA helped translate the phone conversations and had immediate access to tapes and made copies of said tapes.

The courts has consistently held that for a joint venture between foreign and United States officials to exist, the interaction must consist of more than simply aiding with the translation of phone conversations, exchanging information accumulated from such wiretap recordings, or United States officers' presence. *Maturo*, 982 F.2d at 62. See also *United States v. Ferguson*, 508 F.Supp 2d 1 (D.D.C. 2007) (Bahamian wiretap found not to be a "joint venture" where DEA did not direct day to day activities, did not provide translation and decoding services, and calls not immediately shared but permitted to hear recordings and review line sheets); *Pfeifer v. United States Bureau of Prisons*, 615 F.2d 873, 877 (9th Cir. 1980) (holding that there was no joint venture where a DEA agent was present and armed while defendant was interrogated in a foreign country); *Birdsell v. United States*, 346 F.2d 775, 785 (5th Cir. 1965) (holding that although United States officers were "present and cooperating in some degree" with local officials, there was no joint venture sufficient to invoke the protections of the Fourth Amendment); *United*

*States v. Morrow*, 537 F.2d 120, 140-141 (5th Cir. 1976) (finding no joint venture where United States officers merely furnished information to foreign officials).

The defendant argues that the conduct by the CNP was a joint venture with the DEA, and evidence collected from the wiretap and searches should be excluded. However, the conduct of the DEA in this case does not rise to the level of being involved in a "joint venture." The DEA's involvement with the CNP consisted of funding for the wiretaps, being briefed on the status of the investigation. Consequently, there is no evidence supporting a joint venture between the DEA and the CNP.

## IV.    Compliance with Foreign Law

If the investigation of the defendant were a "joint venture," the evidence would still be admissible as it was legally obtained pursuant to Colombian law. Evidence from a joint venture extraterritorial search between foreign and United States officers is admissible if it is reasonable. *United States v. Barona*, 56 F.3d 1087 (9th Cir. 1995). Reasonableness is determined by whether applicable foreign law was followed. Id..

In *Barona*, the court found that Denmark and United Officers conducted a wiretap via a joint venture. The court then examined to Danish law to determine whether the wiretap was in compliance; finding that there was compliance with Danish law, and therefore the search was reasonable. The evidence collected from the wiretap was therefore admissible and not subject to exclusion under the Fourth Amendment. *Id.*

Colombian authorities, in their establishment of a judicial wiretap and their searches and seizures, followed the applicable Colombian law. Therefore, the evidence is reasonable and admissible.

### V.     The Good Faith Exception Applies to Extraterritorial Searches

In *United States v. Peterson*, 812 F.2d 486, 488-89 (9th Cir. 1987), the court concluded that although a Philippine wiretap with "substantial" U.S. involvement was a joint venture, and officials did not adhere to Philippine law, there was no Fourth Amendment violation and evidence gathered from the wiretap was admissible.  The court held that the good faith exception applies to American official's reliance on Philippine authorities' assurance that wiretaps were legal.  See also United States v. Juda, 46 F.3d 961 (9th Cir. 1995) (good faith exception applies where DEA agent reasonably relied on Australian official's representation that a warrant was not needed).

In this case, the DEA was informed by the CNP that they had obtained the appropriate judicial authorizations to conduct the wiretaps and searches of residences and businesses.  Consequently, the DEA relied upon the fact that the wiretaps and searches were supported by appropriate legal authorization from the Colombian courts.  Consequently, the government respectfully requests the Court deny defendants' motion to suppress.

### CONCLUSION

Wherefore, the government respectfully requests, for the reasons set forth above, that this Court deny defendants motions.

Respectfully submitted,

KEN BLANCO, Chief
Narcotics and Dangerous Drug Section


_____/s/_____
Patrick H. Hearn
Trial Attorney
Narcotics and Dangerous Drug Section

U.S. Department of Justice
1400 New York Avenue, N.W.
Washington, D.C.  20005
(202) 305-7606

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that on August 10, 2008, Government's Omnibus Response to Defendants' Motion was sent via ECF counsel for the defendants.


_____/s/_____
Patrick H. Hearn
Trial Attorney
U.S. Department of Justice
Narcotic and Dangerous Drug Section